## IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 31994

| | |
|---|---|
| IN RE: SRBA CASE NO. 39576 (SUBCASE NUMBERS 55-10288B, 55-10289B, 55-10290B, 55-10292B, 55-10293B, 55-10295B, 55-10296, 55-10297B, 55-55-10298, 55-10299B, 55-10300, 55-10301B, 55-10303B, 55-13451, 55-13846 AND 55-13844.) | ) Twin Falls, November 2006 Term )<br> ) 2007 Opinion No. 24 )<br> ) Filed: February 9, 2007 )<br> ) Stephen W. Kenyon, Clerk |
| LU RANCHING CO.,<br><br>     Appellant-Cross Respondent,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>     Respondent-Cross Appellant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, in and for Twin Falls County. The Hon. John M. Melanson, District Judge.

The judgment is <u>affirmed</u> in part, <u>vacated</u> in part, and <u>remanded</u> for further proceedings.

McQuaid Bedford & Van Zandt LLP, San Francisco, California, and Roger D. Ling, Rupert, counsel for appellant. Elizabeth Ewens argued.

United States Department of Justice for respondent. Elizabeth Ann Peterson argued.

---

EISMANN, Justice.

This is an appeal from a judgment upholding LU Ranching Company's claim to instream water rights on federal rangeland for watering livestock and determining the priority dates of those water rights. The district court also denied Lu Ranching Company's request for an award of attorney fees. We affirm the district court's holding that LU Ranching Company has instream

water rights, vacate its determination of priority, and remand for a redetermination of the priority dates of such rights.

## I.  FACTS AND PROCEDURAL HISTORY

LU Ranching Company (LU Ranching) is a corporation that has a cattle operation located in Owyhee County, Idaho.  It owns approximately 5,000 acres of land that it purchased in 1976.  LU Ranching's predecessors had over the years acquired smaller ranches in order to accumulate holdings totaling 5,000 acres.  When LU Ranching purchased its real property, it also acquired grazing rights located on three allotments pursuant to the Taylor Grazing Act, 43 U.S.C. § 315 *et seq.*  Those three allotments are called the South Mountain, the Cow Creek, and the Cliffs grazing allotments.

LU Ranching claimed instream[1] stock watering rights with a priority date of May 20, 1872, in thirteen water sources located on federal land within those three grazing allotments.  The United States filed an objection, and the matter was first heard by a special master.  The special master found that the patents and affidavits filed as proof of homestead by LU Ranching's predecessors were sufficient to establish that they had been using federal land and the water located thereon from the time the original patent holder began living on the land.  The earliest patent issued to one of LU Ranching's predecessors was issued on September 29, 1886, to Ezra Mills.  In his affidavit submitted to obtain the patent, Mills stated that he had lived on and worked the homestead since June 10, 1876.  The special master therefore found that LU Ranching was entitled to a priority date of June 10, 1876, for all of its claimed water rights.  Both parties sought review by the district court.

The district court first addressed the law to be applied.  It held that private parties could appropriate water on federal land both prior to and after the adoption of the Taylor Grazing Act in 1934; that no physical diversion was required to appropriate water for stock watering; that an intent to appropriate was required, but such intent could be inferred from the application of the water to a beneficial use; that water rights obtained on federal land were appurtenant to the livestock owner's nearby deeded ranch property; and that the water rights would pass with a

---

[1] Although we refer to them as "instream" water rights, the water sources do not need to be streams.  They can be any natural water source, including springs that simply form pools of water.  Calling them instream water sources simply means that the water was applied to a beneficial use without diverting it from the water source.

conveyance of the ranch property if such was the grantor's intent, which could be inferred from the circumstances. The district court then analyzed the facts in light of its statement of law.

The district court held that the special master erred in basing a priority date for all claimed water rights upon the historical use of only one of the patented properties and in failing to analyze which water rights were acquired and transferred as appurtenances to which patented properties. The district court examined the facts with respect to each of the three grazing allotments: South Mountain, Cow Creek, and Cliff's. For clarity, the water rights claimed in the South Mountain allotment can be further divided into those appurtenant to the Duncan homestead and those acquired by Galo Mendieta. Likewise, the water rights claimed in the Cow Creek allotment can be subdivided into those related to that portion of the Mills homestead located in Section 25 and that portion located in Section 26.

**South Mountain allotment—Duncan homestead.** Warren C. Duncan was the first of LU Ranching's predecessors to acquire real property in the vicinity of the South Mountain allotment. In 1910 Duncan filed a homestead entry application on 160 acres in Owyhee County and received a patent for the homestead entry on December 9, 1914. The district court found that there was no evidence in the record indicating that Duncan raised livestock.

After several mesne conveyances, Patrick O'Keefe purchased the Duncan property on July 14, 1928. With the passage of the Taylor Grazing Act in 1934, ranchers were required to obtain a grazing permit to pasture livestock on federal lands. On June 24, 1935, O'Keefe applied for a grazing permit for 200 head of cattle. That permit was rejected on August 22, 1935, on the ground that O'Keefe did not own any cattle. On April 7, 1937, O'Keefe again applied for a grazing permit, which was granted in 1938 for forty head of cattle and four horses on federal land within the South Mountain allotment. On October 14, 1941, O'Keefe sold the Duncan homestead to Galo Mendieta.

The district court held that the earliest priority date for water rights obtained by O'Keefe was July 1, 1938, which was the commencement date for the 1938 grazing season. The court noted that after 1934, O'Keefe could not have obtained water rights on other federal rangeland located outside of the land covered by his grazing permit because a valid water right cannot be initiated by trespass onto another's property. Had he obtained water rights on such other federal rangeland prior to 1934, he could not have continued to use the water located thereon because he

3

would not have had access to that land. The water rights claims related to the Duncan homestead are 55-10290B and 55-10292B.

**Cow Creek allotment—Mills homestead.** Ezra Mills was the first of LU Ranching's predecessors to acquire real property in the vicinity of the Cow Creek grazing allotment. The district court determined that there was no evidence that Mills was engaged in the livestock business prior to or contemporaneous with the issuance of his patent. Mills sold his property on July 9, 1892, and after several mesne conveyances it was acquired by Mary Shea on May 8, 1909. The district court found that at that point in the chain of title there was no evidence that the owner of the Mills property had used it or adjacent federal rangeland for raising livestock.

**Mills homestead in Section 26.** On November 8, 1913, Mary Shea conveyed to George Kellogg the one-half of the Mills property that was located in Section 26. Kellogg conveyed the property to William Flora on May 3, 1937. Flora applied for a grazing permit, but it did not contain specific information. After mesne conveyances, the land was purchased by Henry and Hattie Fretwell on January 3, 1947. The district court determined that there was no evidence as to when the property or adjacent public rangeland was used in connection with any livestock operation prior to the date the Fretwells acquired the property. On September 6, 1949, the Fretwells sold the property to Galo Mendieta. The sale included grazing privileges for twenty head of cattle within the Trout Creek allotment, which is within the Cow Creek allotment. The district court found that Mendieta typically began grazing on public rangelands on April 1 of each year, and so he would not have begun livestock grazing on public land in connection with his purchase of this property until April 1, 1950. Thus, the court found that water rights 55-10299B and 55-10300 have an April 1, 1950 priority date.

**Mills homestead in Section 25.** On October 15, 1919, Mary Shea conveyed to Harry Staples one-half of the Mills property, which was located in Section 25. After several mesne conveyances, Patrick O'Keefe purchased the property on January 30, 1933. On April 7, 1937, O'Keefe submitted an application for a grazing permit, and he was issued a permit for twenty head of cattle in the Cow Creek grazing allotment commencing on April 15, 1937. The district court held that O'Keefe could not have had any water rights on federal land prior to that date because he failed to mention any such water rights in his application for a grazing permit. O'Keefe sold the property to Galo Mendieta on August 4, 1941. Based upon the foregoing, the

district court determined that water rights 55-10295, 55-10296, 55-10297B, and 55-10298 have an April 15, 1937 priority.

**South Mountain and Cow Creek allotments—Mendieta.** On September 6, 1949, Galo Mendieta purchased from the Fretwells the half of the Mills homestead that was located in Section 26. He had previously purchased the other half of the Mills homestead and the Duncan homestead. After his purchase from the Fretwells, Mendieta applied for and obtained grazing permits in the South Mountain and Cow Creek allotments that exceeded the boundaries of the grazing permits previously associated with the Duncan and Mills homesteads. Based upon when Mendieta typically began grazing on public lands, the district court determined that the priority dates for water rights claimed as a result of Mendieta expanding his grazing operations would be April 1, 1950. That priority date applies to water rights 55-10288B, 55-10289B, 55-10293B, and that portion of 55-10290B and 10292B not located within the land covered by O'Keefe's grazing permit.

**Cliff's allotment.** In 1909 George Ewings, Jr., filed a homestead application for 160 acres of land in Owyhee County, and he received a patent on July 26, 1910. None of the historical documents in support of the homestead entry suggest that Ewings was engaged in the livestock business. On July 16, 1912, Ewings conveyed the property to Clyde Foster. On January 12, 1937, Foster applied for and received a grazing permit, although a copy of it was not in the record. In his application, Foster was asked to identify all sources of water owned or leased by him in connection with his livestock operation on the public domain. Because Foster did not list any water sources within the Cliff's allotment, the district court held that any water rights he obtained in Cliff's allotment were based upon appropriations occurring after he made the grazing application. The district court therefore held that the earliest priority date for water right 55-10303B located in the Cliff's allotment was July 1, 1937, the date he would have begun grazing under the permit.

**Other grazing rights.** LU Ranching acquired other grazing privileges by transfer from others. The district court held that there was no evidence in the record of the historic use of those grazing privileges. Therefore, LU Ranching failed to prove it had obtained any water rights in connection with those transfers. The United States also challenged the special master's descriptions of the places of use for some of the water rights. The district court rejected those challenges on the ground that the special master's findings were not clearly erroneous.

5

The district court entered a judgment in conformity with its findings, and it certified that judgment as final pursuant to Rule 54(b) of the Idaho Rules of Civil Procedure. LU Ranching timely sought an award of attorney fees under Idaho Code § 12-121 and 28 U.S.C. § 2412(d). The district court held that attorney fees were not awardable under Idaho Code § 12-121 because the United States did not assert or defend any matter frivolously, unreasonably, or without foundation. With respect to the requested award under 28 U.S.C. § 2412(d), the district court held that attorney fees were not awardable under that statute because the position of the United States was at all times substantially justified. Based upon that ruling, the district court did not address the issue of whether 28 U.S.C. § 2412(d) permitted a state court to award attorney fees against the United States. LU Ranching timely appealed and the United States timely cross-appealed.

## II. ISSUES ON APPEAL

1. Did the district court err in determining the priority dates for LU Ranching's water rights?
2. Did the district court err in denying LU Ranching's request for an award of attorney fees?
3. Is LU Ranching entitled to an award of attorney fees on appeal pursuant to Idaho Code § 12-121 or 28 U.S.C. § 2412(d)?
4. Did the district court err in holding that instream water rights on federal land can be appurtenant to privately owned property?

## III. ANALYSIS

This is a companion case to *Joyce Livestock Company v. United States of America*, Nos. 32278, 32279, & 32846 (Idaho February 9, 2007). In *Joyce Livestock* we addressed the legal issues applicable to the appeal in this case. We will not analyze those issues again here, but will merely refer to the opinion in *Joyce Livestock* when appropriate.

**A. Did the District Court Err in Determining the Priority Dates for LU Ranching's Water Rights?**

In the *Joyce Livestock* case, we vacated the district court's determination of priority dates because of certain errors in law made by the district court. It had held that a livestock owner

6

could not obtain water rights on federal land for instream stock watering without evidence of "an intent to appropriate." It also held that the failure to list such water rights in applications for grazing permits showed the lack of such intent. It had also held that water rights appurtenant to real property would not pass with a conveyance of that real property absent evidence that the grantor also intended to convey the appurtenant water rights. Finally, it failed to recognize the significance of predecessors being granted Class 1 grazing permits. The district court made the same errors when analyzing the evidence in this case. We therefore vacate its determination of priorities for the water rights claimed by LU Ranching and remand for a redetermination of those priorities in a manner consistent with our opinion in *Joyce Livestock Company v. United States.*

**B. Did the District Court Err in Denying LU Ranching's Request for an Award of Attorney Fees?**

Both LU Ranching and Joyce Livestock sought an award of attorney fees pursuant to Idaho Code § 12-121 and 28 U.S.C. § 2412(d). The district court denied both of their requests for the same reasons. With respect to Idaho Code § 12-121, it found that the United States had not pursued or defended the matter frivolously, unreasonably, or without foundation. We affirmed the district court in the *Joyce Livestock* case, and for the same reasons we affirm the district court in this case. In both cases the district court also denied LU Ranching's and Joyce Livestock's requests for attorney fees pursuant to 28 U.S.C. § 2412(d) because the positions of the United States were substantially justified. In *Joyce Livestock* we affirmed the district court's denial on the ground that the statute does not authorize state courts to award attorney fees against the United States. We likewise affirm the denial in this case on the same basis.

**C. Is LU Ranching Entitled to an Award of Attorney Fees on Appeal Pursuant to Idaho Code § 12-121 or 28 U.S.C. § 2412(d)?**

LU Ranching seeks an award of attorney fees on appeal pursuant to Idaho Code § 12-121 and 28 U.S.C. § 2412(d). For the same reasons we denied the request in the *Joyce Livestock* case, we do not award attorney fees on appeal to LU Ranching.

**D. Did the District Court Err in Holding that Instream Water Rights on Federal Land Can Be Appurtenant to Privately Owned Property?**

7

In its cross appeal, the United States raises two legal issues. First, it argues that a water right for instream livestock watering cannot be appropriated without manifestation of some intent to obtain a water right which goes beyond merely applying the water to a beneficial use. Second, it argues that instream stock watering rights on federal land cannot as a matter of law be appurtenant to privately owned property. It raised both arguments in the *Joyce Livestock* case. For the same reasons we rejected those arguments in that case, we reject them in this one.

## IV. CONCLUSION

We affirm the judgment of the district court holding that LU Ranching has established water rights and denying its request for an award of attorney fees. We vacate the district court's determination of the priority dates of LU Ranching's water rights and remand this case for redetermination of such priority date(s) in a manner consistent with our opinion in *Joyce Livestock Company v. United States*. We deny LU Ranching's request for an award of attorney fees on appeal.

Chief Justice SCHROEDER, and Justices TROUT, BURDICK and JONES **CONCUR**.